UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 02-30767 - WRS
                                                   Chapter 7

STEPHEN L. PRICE,

    Debtor.


SUSAN S. DEPAOLA, TRUSTEE


    Plaintiff,                               Adv.Pro.No. 05-3063 - WRS

v.

STEPHEN L. PRICE AND STARLA
W. PRICE FRAZIER


## MEMORANDUM DECISION

This Adversary Proceeding is before the Court upon the Plaintiff's[1] Motion to Strike Jury Demand of Defendant Starla W. Price Frazier ("Frazier"). (Doc. 34). Defendant Frazier has filed a response in accordance with this Court's Order of April 11, 2006. (Docs. 74, 88). For the reasons set forth below, the Motion to Strike Jury Demand is GRANTED. (Doc. 34).

---

[1] The Court will refer to Plaintiff, Susan S. DePaola, as "Trustee."

## I. FACTS

This Adversary Proceeding, brought by the Chapter 7 Trustee against Frazier and Stephen L. Price ("Debtor")[2], involves two pieces of property that were the subject of a divorce and marital settlement agreement dated August 2, 2001. (Doc. 47, Ex. C). The two items of property are (1) 250 shares of common stock in Tiffin Motor Homes, Inc., and (2) a residence in Steamboat Springs, Colorado. The residence has since been sold and the Trustee alleges that Frazier has received and used the balance of the proceeds from the sale of the residence. The Tiffin Stock was the subject of a lawsuit in which the Debtor participated as a party plaintiff in a minority shareholder action against Bob Tiffin, in 2001 in the Circuit Court of Franklin County, Alabama. (C-01-223). The Trustee contends that these two items, specifically, the proceeds from the sale of the residence, the stock and any settlement proceeds or damages from the civil action in Franklin County, are property of the estate. On November 8, 2005, Frazier filed a counterclaim against the Trustee and a counterclaim against Thomas E. Baddley, the Debtor's counsel in the minority shareholder action, as well as a crossclaim against the Debtor. (Doc. 26). In addition to asserting a counterclaim and crossclaim, Frazier demanded a jury trial of all claims and issues in this Adversary Proceeding. (Doc. 26). On March 13, 2006, the Trustee amended her complaint adding a fraudulent conveyance claim pursuant to the Alabama Fraudulent Transfer Act, § 8-9A-4. (Doc. 59).

---

[2] Stephen L. Price filed a voluntary Chapter 11 petition in this Court on March 11, 2002. (Case No. 02-30767, Doc. 1). This case was converted to Chapter 7 of the United States Bankruptcy Code by this Court's Order of April 24, 2002. (Case No. 02-30767, Doc. 18).

## II. DISUSSION

### *A. This adversary proceeding is not an action at law*

The Court first finds that the claims involved in this Adversary Proceeding are equitable rather than legal in nature. The Trustee is seeking to recover two items as property of the Debtor's bankruptcy estate. These two items, a residence in Steamboat Springs, Colorado, and 250 shares of common stock in Tiffin Motor Homes, Inc., have both been reduced to proceeds. Frazier contends that because the Trustee has sued Frazier alleging a fraudulent transfer and is seeking a monetary judgment, she is entitled to a jury trial. (Doc. 88, pp. 1-4). Essentially, Frazier argues that the claims asserted against her are legal in nature, and consequently the Seventh Amendment guarantees her right to a jury trial. The Court disagrees with Frazier's characterization of the nature of this suit. The starting point for addressing the Seventh Amendment right to a jury trial in the bankruptcy context is the Supreme Court decision of Granfinanciera v. S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). The Supreme Court set forth the analysis as follows:

> The form of our analysis is familiar. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." (citation omitted). The second state of the analysis is more important than the first. (citation omitted). If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a

factfinder.  <u>Granfinanciera v. S.A. v. Nordberg</u>, 492 U.S. 33, 42, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

In considering the first step of the analysis, the Supreme Court in <u>Granfinanciera</u> determined that "actions to recover preferential or fraudulent transfers were often brought at law in late 18th-century England."  <u>Id</u>. at 43.  The Supreme Court further explained that where the fraudulent transfer was of cash, such action would be for money had and received, i.e, an action at law.  Id. at 43.  After considering whether fraudulent transfer actions were more akin to claims brought in courts of equity and after considering whether the relief sought by the bankruptcy trustee was more legal or equitable, the Supreme Court consequently determined that such fraudulent transfer claims were more legal, rather than equitable in nature.

While recognizing the pronouncements made in <u>Granfananciera</u>, the Court finds that the instant case arises under very different circumstances and presents a different type of fraudulent transfer action than the one considered by the Supreme Court.  First, while Frazier focuses on the Trustee's pursuit of monetary relief, the Trustee in fact is seeking various forms of relief.  (Doc. 88).  To be certain, the pleadings reflect that the Trustee is seeking a sum of money, namely the proceeds from the sale of the residence and the settlement and recovery of damages from the shareholder litigation involving the Tiffin Stock.  (Doc. 59).  However, this is not just a suit for a determinate sum of money.  The Trustee is also seeking recovery of the Tiffin Stock as property of the estate, as well as a declaration of the rights, duties, and liabilities of the parties.  (Doc. 59).  Furthermore, the gist of the Trustee's contentions is that the transfer of the Tiffin Stock

4

and the residence, pursuant to the martial settlement agreement, constituted a fraudulent transfer. The Supreme Court in Granfinanciera stated the following:

> If the subject matter is a chattel, and is still in the grantee's possession, an action in trover or replevin would be the trustee's remedy; and if the fraudulent transfer was of cash, the trustee's action would be for money had and received. Such actions at law are as available to the trustee to-day as they were in English courts of long ago. If on the other hand, *the subject matter is land or an intangible*, or the trustee needs equitable aid for an accounting or the like, he may invoke the equitable process, and that also is beyond dispute. Granfinanciera v. S.A. v. Nordberg, 492 U.S. at 44)(citing 1 G. Glenn, Fraudulent Conveyances and Preferences § 98, pp. 183-184 (rev. ed. 1940)(emphasis added).

Here, the Trustee's action involves the transfer of real property and stock. See In re: Slentz, 157 B.R. 418, 419 (Bankr. N.D. Ind. 1993)("stock in a corporation is a textbook example of what the law classifies as intangible personal property"); In re: Glazer, 248 B.R. 528, 532 (Bankr. N.D. Ohio 2000)(court recognized "that an action to recover for an alleged fraudulent transfer of real property is generally a creature of equity for which there is no right to a jury trial.")(citing In re: Pasquariello, 16 F.3d 525, 529-30 (3rd Cir. 1994); Damsky v. Zavatt, 289 F.2d 46, 53 (2d Cir. 1961)).

Additionally, this particular action is also unique in that it stems from a distribution of property pursuant to a divorce action and marital settlement agreement. (Doc. 47, Ex. C). It is well established that such proceedings are equitable in nature to which there is no entitlement to a jury trial. See Evans v. Evans, 547 So.2d 459, 461 (Ala. 1989)(where facts and issues in case emanated from parties' divorce proceedings and involved marital property "nature of action was essentially an equitable proceeding" not triable to a jury); Coleman v. Coleman, 566 So.2d 482, 485-86 (Ala. 1990)("trial by jury is not provided for in divorce actions in Alabama"); Weil v. Lammon, 503 So.2d

5

830, 832 (Ala. 1987)(Adams, J., concurring)(same); see also Shelton v. Shelton, 376 So.2d 740, 741 (Ala. 1979)("[w]here a plaintiff's claim is equitable in nature there is no right to a jury trial."). Therefore, because the Trustee's action involves the transfer of real property and stock, and also because the transfers occurred pursuant to a divorce action and in accordance with a martial settlement agreement, the Court finds this to be an equitable proceeding in which Frazier has no right to a jury trial.

### *B. Frazier has lost any entitlement to a jury trial*

Alternatively, the Court finds that even if this action were an action at law and could not be maintained in equity, by filing her counterclaim, Frazier has subjected herself to the Court's equitable power and thereby lost her right to a jury trial in this fraudulent conveyance action. Supreme Court precedent on this issue has explained that "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." Langenkamp v. Culp, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990)(quoting Granfinanciera, 492 U.S. at 58-59).

Although Granfinanciera and Langenkamp addressed fraudulent conveyance and preference claims, the reasoning espoused in both has been extended by numerous courts to the filing of counterclaims. See In re: Peachtree Lane Associates, Ltd., (7th Cir. 1998)(having submitted a claim against the bankruptcy estate, defendants were no longer entitled to a jury trial on either the adversary complaint or on their own counterclaims); In re: Warmus, 276 B.R. 688 (S.D. Fla. 2002)("counterclaim is akin to filing a claim, and

6

does act as a waiver as to the right to a jury trial"); In re: Glazer, 248 B.R. at 533 ("[s]ince *Granfinanciera* and *Langenkamp*, courts have consistently construed counterclaims filed in an adversary proceeding as claims against the bankruptcy estate which divest a defendant in an adversary proceeding of the right to a jury trial"); In re: Allied Companies, Inc., 137 B.R. 919, 923 (S.D. Ind. 1991)(defendant's counterclaim for either a reclamation of goods, a priority claim, or a lien, invoked public as opposed to private rights, and therefore no jury was required by the Seventh Amendment); In re: Mindeco Corp., 212 B.R. 447, 451 (E.D. N.Y. 1997)("the Court finds that [creditor], by invoking the bankruptcy court's equitable jurisdiction, and asserting his counterclaims, has waived his right to a jury trial"); In re: Schwinn Bicycle Co., 184 B.R. 945, 952-53 (Bankr. N.D. Ill. 1995)(because defendant effectively filed a claim against the estate her claim and the plaintiff's preference action became integral to the restructuring of the debtor-creditor relationship and must be addressed under this Court's equitable jurisdiction); O'Neill v. New England Road, Inc., 2000 WL, at *5 (D. Conn. Feb. 28, 2000)("numerous courts have construed counterclaims filed in an adversary proceeding instituted by a chapter 11 trustee as claims against the bankruptcy estate that divest a defendant of the right to a jury trial"); In re: Robinhood, Inc., 192 B.R. 124, 128 (W.D. N.C. 1995)("when a creditor filed a counterclaim against a debtor in response to an adversary proceeding brought in bankruptcy court, he has succumbed to the jurisdiction of that court and waived his right to a jury trial"); In re: Hudson, 170 B.R. 868, 873-76 (E.D. N.C. 1994)(court found that counterclaim was a claim against the estate, triggering the non-jury, public rights process of allowing and disallowing claims in the bankruptcy court); Segal v. California Energy Devolopment Corp., 167 B.R. 667, 672 (D. Utah

7

1994)(defendant lost its right to a jury trial when it filed its counterclaim against the bankruptcy estate); In re: Southern Textile Knitters, Inc., 236 B.R. 207, 212 (Bankr. S.C. 1999)(defendants waived right to a jury trial in adversary proceeding by filing counterclaims against trustee in his representative capacity); In re: Bayless, 108 B.R. 299, 304 (W.D.Okla. 1989)(defendants consented to the equitable jurisdiction of bankruptcy court by filing their counterclaim); In re: Atlantic International Mortgage Co., 334 B.R. 719, 721 (Bankr. M.D. Fla. 2005)("[i]t is clear that once a party has filed a claim against a bankruptcy estate that party is subject to the equitable jurisdiction of the bankruptcy court, and, thus, is not entitled to a trial by jury."); cf. Control Center, L.L.C., 288 B.R. 269, 282 (M.D. Fla. 2002)(noting that courts rely upon either a theory of "waiver" or "conversion" whereby "the defendant looses 'its right to a jury trial by filing a counterclaim and thereby seeking a piece of the disputed res, the debtor's estate, which [is] subject to the bankruptcy court's equitable power to allow and disallow claims.'" (citation omitted).

      Frazier focuses on the fact that her counterclaim is compulsory and contends that she cannot be said to have voluntarily waived her right to a jury trial. As several courts have treated and rejected this very argument, Frazier's point is unavailing here. See In re: Warmus, 276 B.R. at 693 (despite conclusion that counterclaim is compulsory, court found that counterclaim is akin to the filing of a claim, and does act as a waiver to the right to a jury trial); In re: Northeastern Graphic Supply, Inc., 2003 WL 22848944, at *4 (D. Me. Dec. 2, 2003)("it is clear that in this contest there is no viable distinction between permissive and compulsory counterclaims."); see also In re: Allied Companies, Inc., 137 B.R. at 925 ("mandatory nature of defendant's counterclaim not dispositive").

Frazier additionally argues that because her counterclaim is not a request for any portion of the disputed res or any affirmative recovery from the Debtor's estate, her counterclaim is more in the nature of an affirmative defense. The Court first notes that the fact that Frazier is claiming not to seek an affirmative recovery from the estate only bolsters the Court's finding that this entire proceeding is equitable in nature. In this sense, instead of advancing her argument for a jury trial, Frazier bolsters the Court's conclusion that there is no right to a jury trial on either the Trustee's claims or on the counterclaims. Secondly, the Court disagrees with Frazier's characterization of her counterclaim. Frazier has asserted a claim against the Trustee and Thomas E. Baddley "to determine the extent and priority of liens in the event the Court erroneously determines that the Trustee possesses any interest in the Tiffin Stock . . ." (Doc. 26). Frazier asserts that in the event the Tiffin Stock is not effectively transferred to Frazier, she has a judicial lien upon the stock and any funds payable to the Debtor from the shareholder litigation. (Doc. 88). Despite Frazier's characterization of the counterclaim, the Court views the determination of lien priority as going to the heart of the "bankruptcy process." In the event there is a determination made that the Trustee does in fact have an interest in the Tiffin Stock, Frazier's claim will need to be addressed by this Court as part of "the restructuring of debtor-creditor relations." In re: Allied Companies, Inc., 137 B.R. at 925 (quoting Granfinanciera, 109 S.Ct. at 2799, n. 14). The Court determines that Frazier has presented a defense which in actuality is a counterclaim against the estate, thereby invoking the equitable powers of this Court.

## III. CONCLUSION

For the reasons set forth above, the Court finds that this is an equitable proceeding in which Frazier has no right to a jury trial. Alternatively, by filing her counterclaim against the Trustee in her representative capacity, Frazier has invoked the equitable jurisdiction of the bankruptcy court and has lost any entitlement to a jury trial. Accordingly, the Trustee's Motion to Strike Jury Demand is due to be GRANTED. (Doc. 34). The Court will enter an Order consistent with this Memorandum Decision by way of a separate document.

Done this 30th day of June, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Von G. Memory, Attorney for Plaintiff
David B. Anderson, Attorney for Starla W. Price Frazier
Charles N. Parnell, III, Attorney for Stephen L. Price
Andre M. Toffel, Attorney for Thomas E. Baddley